Lines Insurance Company and others. Arguments not to exceed 15 minutes per side. Mr. Nelson for the appellants. Mr. Nelson. Good morning, Your Honors. Matthew Nelson on behalf of Hantz. Your Honors, Hantz suffered a covered loss under the bond in this case. The bond is now in the hands of Hantz Financial Services, a direct loss under the policy because the funds that Mr. Larson took were funds that were held by Hantz and also funds that Hantz was legally responsible for. Consequently, the district court should be reversed on that ground. With regard to the E&O policy, there is no question here that the loss was a covered loss. The only question is whether the knowing wrongful act exclusion applies. And there is an ambiguity in that exclusion such that it can be read to refer only to bad acts or to exclude coverage for all bad acts or conversely only to exclude coverage for bad actors. Because it does not unambiguously exclude our claim under Michigan law, the district court erred on that ground as well and should be reversed. I would like to address the bond and I would like to turn to what I think is probably... I want to hear your argument on, we do want to hear your argument on both of those, but I would also like to hear your argument on the statute of limitations question with respect to the first one. Certainly, Your Honor. During your discussion. And it is my intention to start with that because I believe that is their strongest argument. And I think it is helpful to look at the claims there in three buckets. The With regard to the settled claims with the other investors, we concede that the contractual limitations bar applies. And we are not entitled to proceed under the bond on that basis. With regard to the Monroe judgment. The statute of limitations being the two-year statute of limitations. The contractually shortened statute of limitations. Michigan statute of limitations would be six years and it would have been timely under that. With regard to the Monroe judgment, the contractually shortened limitations period was met because there was not a final judgment in that case until after the appellate court ruled and the time for filing an application to the Michigan Supreme Court had expired. And I say that because the language in the policy is obviously final judgment. And final judgment can reasonably be understood in two ways. It can be understood as being the time when a right to appeal accrues because the district court proceeding has completed or the trial court proceeding has concluded. Or it can mean that the case is over. And under Michigan law, it is used both ways. You see in the Michigan court rule that they cite the accrual of the appeal. You also see with regard to Michigan law involving collateral estoppel that a judgment is not final until after all appeal rights have expired. Because it is capable of being interpreted in two ways, it is ambiguous and therefore must be construed against the insurer under Michigan law. A reasonable person, I submit, reading this policy, especially a reasonable business person, would conclude that in fact the intent is for the case to be over because it makes very little sense to file a lawsuit against the insurance company saying pay us for this judgment when at the same time you're still arguing the appellate courts were entitled to have this reversed and not have any money paid. And in fact, what would happen in that situation would be of course the parties would stipulate to stay or somehow delay the proceedings against the insurance company. I think the common sense thing would be to tell the insurance company earlier so they could potentially participate in the litigation or the settlement. Your Honor, here the insurance company was fully aware of the case and had the opportunity to participate. In fact, any settlements were approved by the insurance company. So there's no issue with regard to notice. The issue is when do you have to sue the insurance company because they've either denied coverage, which they hadn't done here, or they're dragging their feet. And before a commercial entity like Hans should be required to incur the additional cost of suing the insurance company, it seems reasonable to expect that they wait for their arguments to be completed with regard to whether or not there's in fact a judgment against them. What is the value of that particular claim? It's about $600,000, Your Honor, a little bit south of that, $593,000. How about the other one? So turning to the Bolton settlement, I believe it's about roughly the same size. It's about $500,000. No, but tell us the argument as to that one as well. With regard to that claim, Your Honor, we would submit that the course of conduct here is sufficient to demonstrate that our client was reasonably lulled into believing that the insurance company was not going to be enforcing the judgment, or excuse me, enforcing the contractual provision. Specifically the reason for that. On that one, I mean, you know, maybe this was just boilerplate stuff and it could be misleading, but it seemed like just about every communication they did reserve their rights. Certainly, Your Honor, they said that they reserved their rights, but they never specifically indicated anything with regard to the limitations period, even after the contractually shortened limitations period had expired as to the settled claims. Furthermore, they engage in conduct which is not what you'd expect from an insurance company after the contractual limitations period had expired. Namely, they continued to ask for documents. They asked us, and in fact directed us, to submit one of our employees for a statement under oath. And even after the statement under oath, they continued to ask for documentation. Consequently, we believe that the entire course of conduct here is sufficient. Arguably, they're just building their case. I mean, why would your client think, well, this is good news for us? It's not that my client was thinking that this was good news for us, but rather that my client was entitled to believe, yes, it looks like they're going towards denying our claim. I mean, crossing their fingers as opposed to acting diligently to knowing the policy says, I mean, includes that statute of limitations provision. Your Honor, understandably, I think you're correct that my client, when looking at the communications, should have been left with a sense of, boy, it looks like the insurance company is going to deny our claim. But not on the basis that we waited too long to sue them, but rather on the basis of there are various other reasons. And with the expectation that perhaps this additional information would be sufficient to overcome that. Regardless of the ultimate tenor of the communications, the issue with regard to whether or not the contractual limitations provision was going to be enforced was never raised. And given the conduct of the insurance company, I believe the entire course of conduct was sufficient for my client to reasonably rely on that. Let's say you're right about that $590,000 claim. Now what do you do about the underlying argument? You're right only in the sense that there's not being a limitations bar. So what do you do? You know, the underlying argument is tricky. And, you know, you've got this bailment idea, which brings in the teller example, which I think intuitively seems pretty good on your side. But, you know, if you look at the lower court briefs, you don't see the word bail, bailment. So it's not clear that that was preserved. And we don't like to reverse district court judges when they didn't have a chance to look at the argument themselves. So how do you deal with all that? Well, Your Honor, specifically with regard to the issue of waiver, we would submit that this court has routinely distinguished, as have most appellate courts, between raising new or different arguments on appeal and raising new issues. And here the issue was, does this specific language in the policy provide coverage or not? And we addressed that issue in the district court. We have raised a refined argument with regard to bailments on appeal. We believe that argument is very strong, and it is tied directly to the language of the policy that was specifically at issue in the district court. But you're correct. There's no reference to the Bailey exception in the district court. But it is simply a variation. Is bailment, I mean, this is really a question for both sides. Is bailment just another way of saying a specific application of agency law? That it's just, you know, who's the agent and who's the principal? And if this fellow was the, Larson was an agent, you're always acting on behalf of principals. Your Honor, I don't believe that it's a specific application of agency law as much as it's a specific application of property law. The concept here is you've entrusted property, I guess in some ways just like a pawnbroker or something like that, where the property has been entrusted to them for another purpose. In the context of lawyers, this, of course, happens with client trust accounts, where the funds are entrusted to you for the purpose of holding for the client. That's exactly what happened here. And, in fact, the language of the policy talks about property that would be a covered loss, including property that's held by the client and also property that the client is legally liable for. Here, there's no question we were legally liable for it. Otherwise, AIG would have never said, yes, go ahead. Sort of like a deposit, right? Excuse me? Sort of like a deposit. Exactly, like a deposit with a bank. But if you were talking about deposits, you wouldn't usually use terms of bailment, would you? I'm sort of taking off on Judge Sutton's question. It seems to me you could make the argument without using the word bailment and maybe even make it stronger. Certainly, Your Honor. I believe that, in fact, let's just go back to the policy language. It says held or legally liable for. We both held it through our agent and we were legally liable for it. And that's what you do for deposits and that's what you do in the teller example. Exactly. And, in fact, if you look at the, and also in the escrow example, and frankly that's the context that this Bailey exception has been applied in. Not to disagree with Judge Rogers, but just to make sure I'm getting it. What seems a little different from the teller, I mean, that's going into the bank's account. Here, it's going to a third party. But it's not going to a third party. You're going to the bank, you're going to and giving the money to the employee, the agent of the bank. Here, you're going to Hans' agent, expecting that Hans is going to be the one investing the funds. But Hans is putting it in still another place. So, in that way. It's not really Hans' money. It's not staying, you know what I'm saying? It's going to a third party. It's getting invested in some mutual fund or something. Correct. So, perhaps the escrow example from the Southern District of California case is closer. But in the same way, and unfortunately I'm too familiar with the banking law to know exactly how the funds deposited end up being property of the bank, even though they're on deposit for you. So, the escrow example is a better example. But in many ways, it's just like where the actual situation of what happened here is just like going into a bank. Then you have these, you know, direct is direct. And, you know, you could argue this wasn't direct because the time the liability of Hans happens is after a judgment and a lawsuit. Your Honor. So, that's, I don't know. You can say that sounds indirect, doesn't it? I mean. It is direct under the property because the policy applies to property held by Hans, not necessarily owned by it, and also property for which it is legally liable. Here it was legally liable from the moment it was taken because it had been given to Hans' agent for the purpose of investing. And Hans at that point was an officer. And Larson at that point wasn't. Sorry, Larson, right. Was an agent acting within the scope of his. Agent. Until he did something wrong with it, he had the choice to go ahead and treat it properly or to change his mind and deposit it in his own account. And from the client's perspective, the same thing happened when they gave him money that he actually deposited and when they gave him money that he took for himself. I see my time has expired. I will turn to the E&O policy on rebuttal. Thank you. Good morning, Your Honors. Harvey Heller on behalf of American International Specialty Lines and National Union. Your Honor, speaking, let me address the issues that you were really focusing on first. We fully believe that the contractual limitations period bars any claim that they have. They have not raised any argument in support of that. In fact, when you get to. Wait, the contractual limitations period for all of the claims? All the claims. I don't know what you mean they haven't raised any argument. That's how it started. I thought it was admirable. He started by saying their best argument. I love it when I get an advocate that acknowledges the best argument on the other side. And I thought he had a pretty good argument as to the $590,000 claim. I'm addressing that. Okay. And my full sentence was they acknowledge before the court they don't have any argument to the investors who settled. That was not argued in their briefs. It is now before the court that they concede that applies to them. That leaves us with only Monroe and Bolton. Now, as to Monroe, that case was, there was a final judgment entered in that case under Michigan law in December of 2010 that gave them 24 months until December of 2012 to say a reasonable business person looking at a policy would consider an exhaustion of the appellate process required before perceiving a final judgment is contrary to the facts of this case because the facts of this case are undisputed. Throughout this entire period of time, everybody had equal access to the policies in question number one. Maybe we have a little bit of a bias, or at least I do, but I tend to think of the appellate process as a pretty important part of whether there is a final judgment. I don't dispute that. But the term final judgment, you can only appeal a final judgment in Michigan. Yeah. And that's the law. And that's what happened in this particular case. A judgment was entered. It went final after 28 or whatever number of days. And it was appealed. That's what happened in this particular case. I think now the meaning of those words depends on the facts of this case. The words either mean, it says final judgment, right, the words of the contract. The words we're interpreting? Yes. Right. Those words either include the appeal or they don't. I don't see what the facts of this case have to do with it. You mean the facts of the words of the contract, or you mean the facts of what happened in the case? I think we have the term final judgment in our contract. It either means final after appeal is expired, or it doesn't mean that. I agree. Those are two possible meanings, right? I agree. That's purely interpretation of those words, right? I don't disagree with you, Your Honor. So really it's not a factual issue? Not a factual issue at all. All right. Why isn't it ambiguous according to his argument without referring to what happened in this case? Why isn't that ambiguous? Why is it not ambiguous? Why couldn't someone read that to mean some reasonable one out of three businessmen read that as saying after appeal? That's the question, right? We're looking at whether that's a reasonable alternative interpretation. If there is, then there's ambiguity, right? Your Honor. That's my question. Well, I suppose if we were dealing with a different set of underlying facts. That I don't understand. Well, a final. We're talking about words in a contract. I agree. And a final judgment is final at the trial court level. When you say that, just to make sure I'm understanding your argument. Yes. I think what you're saying is, well, under Michigan law, final judgment, that phrase usually refers to a district court's final judgment. And my response to you is, well, we have the same principle in federal court. That's a phrase used to trigger what's appealable and what's not at the trial level. But I don't know that that body of law tells us that the phrase final judgment in a contract only refers to a district court. That's my pushback if I'm grasping your argument. Well, if one were to suggest, just to be responsive to your argument, to your position, Your Honor, to the way you're inquiring. In this particular case, or in any case. If you had a judgment from a court, okay, and you had, as we have in this case, whether it be a statute of limitations or a contractual limitations period, there's no question that it is not told, per se, while something's on appeal. One would have to get a tolling agreement. And nobody sought a tolling agreement in this particular case.  This case is. Yeah, that just begs the question. Because you have a. Why? Because this time period, very simply, because the period was running on that judgment, as to Monroe. That's what I say. You're right. That is our position. But let me literally forget final judgment law in the sense of when something's appealable or what is appealable. So just pretend that body of law doesn't exist. And someone asks you the word final judgment. What does that mean? It sure seems one natural reading, maybe not the only one, but a natural reading would be when the litigation's over, i.e., final. Why is that? I just don't. That just seems like a legitimate reading of the words. You know, I hear what you're saying, Your Honor. In my upbringing, I don't understand it that way. And to me, a final judgment is a judgment at the trial court level. It is not contingent on what happens on appeal, which might be subject to reversal, remand, or anything else. It is a final judgment. Are you interpreting contract language that way? As I stand here before you, I don't have one, but it's never. So it's just sort of we're trying to figure out what the, I guess, what the stay law would be on what the contract says. I mean, you can't get a stay on a judgment without a money judgment, a final judgment without a bond, usually. I mean, so it's, I mean, I think, to me, it's universally accepted. Now, let's just think for the purpose of this. Why would you do it? And doesn't it seem strange to, let's just say you have a very close case, so you have your, quote, final judgment at the trial level. You think it's a good idea to have the litigation about coverage going on while there's a real likelihood of reversal of the underlying judgment? Doesn't that seem inefficient? Well, that wouldn't have happened in this particular case, Your Honor. This case, it was, well, I understand what you're saying. No, I don't think that's true at all. Then they had an obligation to seek a tolling agreement. No, but you're just, Judge Cook points out, that just begs the question. I'm just saying you have this language which was written before anyone knew what would happen here. So it's possible you could have a coverage dispute, which is, it's a 51-49 case. It's just a really close case. The trial judge decides the way they decide, but everyone agrees it's impossible to predict what the intermediate or much less the Supreme Court is going to do. And your reading of the contract requires a tolling agreement or filing the insurance coverage dispute in the middle of litigation, which everyone agrees could come out either way. That seems odd to me. Well, Your Honor, it was then incumbent on them to bring it up. The topic of what you're suggesting means that one must evaluate the merits of a case after a trial court final judgment is entered to determine whether or not it's really final because it's a close call in somebody's opinion. That is not an objective reading of a contract, I don't think. Just to be clear, I'm just examining the policies of why you might interpret the word final judgment to mean final after litigation is over as opposed to final after trial court decisions happen. That's all I'm saying. That's the best answer I have for you, Your Honor. And that is that final judgment when you have contracts in the possession of both sides and both sides are represented by counsel. And this argument never, never raised below, by the way, is a final judgment. And arguments not raised below are waived on appeal. As to Bolton, I think what's more significant in this case is when, on the contractual limitations, when the inquiry was made below, repeatedly by counsel, he first said to the court when asked why the case wasn't brought, I don't have a good answer. Second time, we had a lot on our plate. It was not a priority from an insurance point of view. We know we have two years. Bolton and Monroe's combined losses, this concept of estoppel by the letters that were written is, I think, a red herring. As to Bolton and Monroe, their combined losses exceeded the $1 million policy that was available on the fidelity bond. There was four months and 19 months after this case was brought, after the letters denying coverage were sent out to bring a lawsuit. Due to a third and another mistake counsel made, they waited a full 24 months from denial, having nothing to do with what was going on with the Monroe case. So in our view, the issue of contractual limitations. What's your take of, if there's not a contractual limitations bar, what's your take of the underlying issue in Monroe in terms of whether it's direct and so forth? I know there's a fair amount of briefing on that point. On direct? Yes. You know, direct, it's a very different argument on appeal than it was below. We never heard, as you pointed out, we never heard the issue of bailment below. We think it's been waived. However, speaking to the issue. I think of it as agency law as well. But anyway, the same point. I am. We don't think it's appropriate to review the so-called bailment exception raised by counsel in light of the waiver standards that exist. It's a wholly new provision. It's not a refinement. And there are no extraordinary circumstances. I don't think it, we also don't feel it was factually developed. It required hands to show. I'm sorry, Your Honor. I understand that it wasn't waived, but you just have a little bit of time and I want to talk about the content of it apart from the terminology. It seemed to me your argument at the very bottom depends on the assumption that when this money or check was received by, who is it? Lauren, is that his name? Larson. Larson. Yes, sir. When it was received by Larson, it wasn't received by the defendant because he was being a fraudster and therefore he wasn't acting within the scope. But the difficulty I have with that, which I would like you to address and which is informed by the teller example, is that when he received that check, he hadn't yet committed fraud. He could have had remorse and treated it properly. At some point, he then either gave it to himself or he gave it to the wrong place and committed the fraud. So when he did that, I don't see how it's different from his taking something out of, for instance, a lockbox where something was placed, if you want to treat it as bailment, or a deposit that was made on behalf of the depositor, or somehow otherwise properly put in the care of Hans, but then he took it out of the proper care of Hans and put it into his own pocket. Why isn't there, in every case, a period of time where he was acting on behalf of Hans and thus that it was within the property that's under the contract language? The contract language deals with, I don't have it in front of me, but it's within the care of or under the custody of or whatever it says. Do you understand what I'm asking? I do. Because it seemed to me your answer to that, if I understood your briefs, your answer to that is no, the instant he took it, it was ultra-virus, it was improper, it was illegal. But I don't see how that could be. I mean, why didn't he have plenty of seconds, minutes, hours, maybe even days before he actually did something fraudulent with it? The answer to that is it would be speculative to know what went on in his mind, other than the fact that it's clearly in the record below. It matters in terms of Hans' responsibility for that property, what's in his mind. You're the one who's saying we have to look at what's in his mind. I would suggest that you don't look at what is in his mind until he does something improper with it. As long as he's doing something proper with it, he's acting on behalf of the, regardless of whether he intends in the future to steal it. Why isn't it true, I'm not saying this, I'm asking this, why isn't it true that when he accepts that check, he's acting on behalf of the bank until he does something wrong with that check? Because both parties freely acknowledge below that it was an absolute knowing wrongful act and a multiple scheme set up with false bank accounts, etc. Now that's answering my question. Well, Your Honor, I would say they all concede, but they don't all concede that he wasn't acting on behalf of the bank when he took the check. There is no record on this issue below, other than the fact that everybody concedes he had a scheme and he wrongfully took the money and he planned to do so. That's the end of the facts, and then he killed himself when they found him out. I understand that, but I'm not seeing why that doesn't mean that he's acting on behalf of the bank until he does something wrong with the money. He could have a scheme, he could plan to do it, change his mind, all of that could be. I'm suggesting not that we know the answer, but that it doesn't make any difference. Because the bank is clearly in control of that money. It's not a bank, but whatever Hans is. A financial services company is in control of that money because the agent is in control of it and has control of it and legally has control of it until, even pursuant to some prior plan, he does something illegal with it, like steal it. I don't understand what the answer to that is. Under Michigan law, per the Hamad case, it would not impose a bailment liability on Hans without Hans being on notice of Larson's wrongdoing. We don't have an aided by agency rule. I'm not on notice of his wrongdoing. I'm assuming that for a while he hasn't done anything wrong. For that period that he has not done anything wrong, i.e., when he's handling the money and has not yet deposited it into his own account, which is inherently going to happen. And he's acting on behalf of Hans. He's an agent of Hans. They see him as an agent of Hans. He's acting as an agent of Hans. Hans thinks that he's acting as an agent of Hans. It's all acting as an agent of Hans until you show something that isn't acting as an agent of Hans, which is something that happens afterwards, which is taking it or grabbing it or giving it to the wrong person. When he does that, then he does something, even if it's pursuant to a prior scheme. It's at that point that he's arguably no longer acting as an agent of Hans. What's the problem with that argument? I'm just not seeing it. And I'm not using the word bailment. Well, for the very simple reason that there's just nothing below on that. Party stipulated from day one in the complaint that was filed against us, it was a scheme of larceny from day one. It was never an issue. If one looks at the complaint in this case from day one or the loss reports, it was always he had a plan, he stole. Nobody ever looked at it. Is the record show that every dime he ever got from a client was pilfered by him? No, the record shows that the loss is totaling 2.6 million plus interest. That's all I know. But it went there more than 2.6 million dollars in client funds. He were invested with him. I don't have that. There's nothing in the record about that. I thought there were just 23 clients that he did this to and there were others that he treated legitimately. That's not in the record? Not in any detail that was fully developed. Is there more than 23? I don't know. I was dealing with a specific loss, these particular losses. And I know my time is up and I just simply want to say that while I thank you for your time today, we did not get to the illusory argument. I think your argument with respect to illusory is pretty clear from the briefs. Thank you. May I just make one sentence point? An insured under Michigan law means all insured per the Vanguard v. McKinney case at 184 Mischief 799 citing Allstate v. Freeman at 432 Michigan 656. And I believe that ends the issue on illusory. Your Honor, it's very quickly three points on rebuttal and then discussion of the E&O policy. There were more than 23 clients. That's well developed in the record. The judgment from the FINRA proceeding would show that. Also, the Bolton's correspondence demonstrates that it wasn't even all of the money for those 23 sets of clients. It was just some of the money that they were depositing. That's why from a client's perspective they couldn't tell one from the other. With regard to the, there was a suggestion that the finality argument with regard to the Monroe judgment was not raised. It was raised below in the summary disposition briefing. And with regard to the question of are there cases out there interpreting contracts with regard to final judgment, we ran a search. We were unable to find cases with regard to specifically that issue. We found a Connecticut court of appeals case that addresses that same language in a statute reaching the same conclusion we've reached. That's 643A Atlantic 3rd 1305. And with regard to collateral estoppel in Michigan at 711 Northwest 2nd 432. What do you say about the basic point that among lawyers when you hear final judgment you kind of think final judgment rule and it does have you obsessed with the trial level? And I'm an appellate lawyer, Your Honor, so of course I have that reaction, but lawyers are not the quintessential reasonable people as I think all of our experience probably has demonstrated. We don't expect that the person who's buying an insurance policy have the level of sophistication of a lawyer. In fact, that's why ambiguities in insurance policies are read against the insurer because lawyers sometimes write things in a way that's confusing to the normal person. But what do you say to the point that after judgment becomes final in the 15 days or whatever the state requires, then a bond has to be posted? I mean, that really pushes things to the finality aspect as opposed to post appeal. Your Honor, I think in practice that's absolutely the case, but I think the question isn't what exactly happens in practice, but what a reasonable person looking at final judgment would read. And I believe that this statement is susceptible to two reasonable alternative interpretations. The time for appeal has attached or we're waiting for the case to be over. With regard to the E&O policy, just very briefly, the fact that this E&O policy and whether it applies to bad acts or bad actors is ambiguous is best demonstrated by the fact that the district court got it wrong in looking at this policy and said, well, any knowledge of the E&O policy is ambiguous. A wrongful act by anyone would be susceptible to this. Here the issue is negligent supervision. A negligent supervision claim arises for the purpose of allowing a plaintiff to circumvent the bar on vicarious liability for a tortious act. Under their interpretation of the policy, we had negligent supervision coverage that would never cover a negligent supervision claim. Consequently, if you look at the ambiguity and then the effect that their interpretation has on the policy, we believe that the district court erred as to that issue as well. I like to ask about the earlier argument about direct. I was hypothesizing, trying to figure whether it was accurate, an argument that when the money or the check was initially received by Loren, he was acting as an agent of, or he was acting on behalf of the district court. That argument would support you. An argument that he might have made in response to that is that that proves too much, there isn't much left, what's indirect? Do you have an answer to that? It's like, yeah, that's a clever argument, but what is the content of indirect if something that indirect we're going to treat as direct? Does my question make sense? It does. I'm struggling to come up with a specific example on my feet here with regard to an alternative situation. What I will point out with regard to the direct and indirect issue here is this exception is firmly established and has, in fact, already been recognized by this court. And in every one of those cases, it's the same policy language, so the same direct versus indirect issue is there. Consequently, when the Fifth Circuit and the Ninth Circuit and the various other courts have addressed this issue, they have concluded that this is, in fact, a direct loss. And I believe that's consistent with the actual policy language here, which is the ultimate touchstone here. And that is, did we hold the money? And the answer is, yes, we did. And with respect to the illusory, I got a little confused because there was an argument and then a counter-argument and an argument and a reply brief, and now you have to answer the argument and the reply brief. Are you still arguing it's illusory? In hindsight, I wish I hadn't used the word illusory. I wish I had simply said... So under the formal illusory doctrine, it doesn't work? The formal illusory doctrine doesn't work. It renders the language with regard to negligent supervision nugatory. That's fair. Unless the panel has further questions, thank you for your time this evening.